SILBERMAN, Judge,
Concurring in part and dissenting in part.
I concur except as to the majority’s decision to affirm the juvenile probation order/disposition order as to burglary of a dwelling. Because the evidence did not establish beyond a reasonable doubt that M.E.R. committed a burglary, I would reverse and remand for entry of a disposition order for trespass.
On the day of the incident giving rise to the charges, Monica Jackson saw M.E.R and “a lot of guys just hanging out in the breezeway” of her apartment complex. She saw M.E.R. enter the apartment of the victim, Ms. De La Cruz. He was wearing a blue shirt. She saw him exit the apartment fifteen to twenty minutes later, at about 5 p.m., with his shirt tucked under his arm. Ms. Jackson could see M.E.R. clearly and did not recall him holding anything other than his shirt. She stated that after M.E.R. left the apartment, the front door was pushed closed but not tightly closed. She added that it was not “closed all the way.” When M.E.R. exited, other individuals were standing outside waiting for him.
Ms. De La Cruz testified that she and her family were gone from their apartment for four to five hours. When they returned home at about 7 p.m., she found that the front door was open. She determined that several pairs of shoes, a Play Station console, some clothes, and a cell phone were missing.
Ms. De La Cruz knew M.E.R. through her daughter. Her daughter lived with her, and M.E.R. had been her daughter’s boyfriend. M.E.R. had been a frequent visitor to the apartment, but M.E.R. and the daughter had broken up a couple of days before the incident. Neither M.E.R. nor anyone else had permission to be in the apartment while she was gone.
Although no one saw M.E.R. carrying anything other than his shirt from the apartment, the trial judge stated, “I don’t know but he has something under his arm that included a blue shirt that he had had on.” When defense counsel argued that there was nothing indicating that M.E.R. *1149 could have been concealing all of the missing property under his arm, the judge observed “[n]ot all of it but there’s other people too.” The judge stated that she did not believe somebody else decided to break into the apartment and take things, but she acknowledged that other individuals may have been involved in taking the missing property.
On appeal, the State argues that “[t]he evidence shows that the group outside [the victim’s] apartment acted in concert and that Appellant was a principal in the commission of the Burglary and the Grand Theft.” The State adds that while Ms. Jackson “could not tell exactly if Appellant was holding anything underneath his arm, covered by his blue shirt,” she saw him enter and exit the apartment “carrying something under his arm.”
The State’s argument and the trial judge’s conclusion that M.E.R. carried at least some of the missing property under his arm simply are not supported by the evidence. No one saw M.E.R. carrying anything other than his shirt under his arm, and Ms. Jackson did not suggest that he had anything hidden in his shirt.
The trial judge correctly observed that other individuals were present in the immediate vicinity and may have been involved in taking the missing property. However, the State presented no evidence that M.E.R. acted in concert with others to commit a burglary. When M.E.R. left the apartment, the door was closed, albeit not tightly, and others were in the area. When Ms. De La Cruz and her family returned later that evening, she found the door open.
Contrary to the trial judge’s finding, no evidence established that M.E.R. had taken any of the missing property or that the missing items could have been hidden under his arm or in his shirt without Ms. Jackson noticing that he was concealing something. While the evidence is consistent with the trial judge’s observation that other individuals may have been involved in taking the property, no evidence established that M.E.R. acted with others to burglarize the apartment. The evidence is equally consistent with the defense’s theory that M.E.R. entered the apartment without the intent to take anything and that he did not take any of the missing property. The defense argued that the door of the apartment had been left open and that anyone could have entered the apartment and taken the property.
Although the trial judge expressed disbelief, the evidence does not refute the possibility that M.E.R. entered the apartment, waited a short while for his former girlfriend to return, and then left, taking nothing other than his own shirt. The State had the burden under section 810.02(l)(b), Florida Statutes (2007), to prove beyond a reasonable doubt that M.E.R. entered the apartment with the intent to commit an offense therein. In my view, the State did not carry its burden as to the intent element.
M.E.R. acknowledges, and I agree, that the evidence is sufficient to show that M.E.R. committed a trespass. See § 810.08. Therefore, I would reverse the disposition order as to the burglary and would remand for entry of a disposition order for trespass. See Pepitone v. State, 846 So.2d 640, 642 (Fla. 2d DCA 2003) (reiterating that an unauthorized entry into a dwelling without the intent to commit an offense therein constitutes a trespass).